Quiroz. Quiroz, yes your honor. I believe that's correct. Fowler. Good morning your honors and may it please the court. Charles Fowler for the United States. Section 922n imposes a narrow liberty restriction on defendants awaiting trial for serious crimes. Unlike common conditions of pretrial release that disarm criminal defendants, cause a forfeiture of their arms, 922n addresses the narrow circumstance where someone facing serious criminal charges facing imprisonment goes out and seeks guns under that circumstance which raises a natural natural inference that they may mean to do harm with those guns. Section 922 is constitutional both under the more general framework for liberty restrictions of indicted defendants applied in Salerno. I've sort of used Salerno as a shorthand for that framework as well as the historical tradition standard announced in Bruin and regardless of 922n's constitutionality the district court erred in dismissing the false statement charge under 922a6 but I will focus on the 922n issue. The tradition most strongly supporting the constitutionality of 922n is the tradition of restricting the liberties of people facing criminal charges for serious crimes and the government's offered really two different analytical lenses through which to consider these historical restrictions on indicted defendants. Given Rahimi and I appreciated the letters you're you're we're moving to step two. Yes your honor the government is as we note in the letter we disagree with Rahimi's analysis we think it effectively eliminates. You're going to jump right to step two. Yes your honor. In the specific context of subsection n half a dozen district courts around the country have tried to do this. What's what's the current tally about what 18th and 19th century history restricted? What's the tally of the district courts? Tally of district courts I believe is four to four. Four to four. About what American history is. About whether there is a tradition sufficient to support 922n. Yes your honor. Which is what American history is. So in portions of the country you you're a felon because some judges think history is one thing and other portions of the country now you're not a felon. Is that right? For the conduct prohibited by. You improve on Judge Engelmeyer's for your position can you improve on Judge Engelmeyer's historical pedigree research in the Rowson case? Are there added historical points you want to make or do you think he pretty much covered the position of the government? For in the in the Southern District case? Yeah. Well your honor I think that opinion actually omits really what I it touches on it but not as directly I think is the way the government's framed it in this case on analogizing under the Bruin framework to the historical restrictions on indicted defendants including pretrial detention. I mean I don't think that opinion really takes the. The Salerno one. I'm talking about like going back to the time of ratification and before then the English and colonial history of denying bail. One of the problems that I want to talk about because if the person is seriously if they are such a danger that they should they should not be given bail that they should be detained. Clearly they're not going to have access to firearms but if the court makes a determination that they are free to go doesn't that undercut that they're not that dangerous? Well I don't think so your honor because again if we're talking about the historical analogy historically. Historically where they released you on your own recognizance or with a bail bond or whatever and they they said you can go but you can't have access to any firearms you can't buy a new firearm. So folks who were charged with with serious crimes historically were more broadly detained than they are under the Bail Reform Act. So this is what I meant in my reply brief when I said you know I think the defendant is is drawing their own comparison because they're comparing historical bail laws to the Bail Reform Act and the Bail Reform Act as your honor points out has you know this this individualized process and a burden on the government to show dangerousness or flight risk. That's Salerno. They're looking at due process individually. Salerno is wouldn't you say deeply implicated itself? What's the history and tradition that that to justify even 3142 conditions? They're being made here right? Well yes your honor and those have uniformly failed so the tally is like 4 to 4 on 922n. There have indeed been some attacks on the 3142 gun condition. All of those have failed and those have failed on a couple of different rationales. One is is that the historical record of restrictions on people including looping in laws just governing dangerousness more generally at the around the time of the founding. So that's been one ground to uphold the condition. I just read Bruin I think pretty literally. We've the government has the burden to come up with what's the exact word distinctively similar precedents. It's a historical evidence inquiry. So so and Judge Counts here did that with what original sources that he looked at or that the parties gave? This was an emotion to reconsider after the verdict right? Yes your honor. He considered surety laws. He considered. In four pages? There was no hearing? There was a hearing. There's an evidentiary hearing? Not an evidentiary hearing. No your honor. It was there was a. Any of the four four district judges have any of them done an So who's doing the history? It's it's though it's essentially what's been presented to this court. It's been. What's the authority that we can decide history? The Supreme Court in Bruin had 80 amici. Amici from PhD historians. We have one amicus. We had no evidence taking below. It is. Who's doing the is I mean I guess this is an honest question. How do you interpret Justice Thomas's instruction that the parties have to compile the history, get the historical evidence and test it so we don't just have judges all over the country disagreeing about what history is. Some people going to jail, others not. What's I guess I'm this is a question. Here's the question. Have you consulted with the solicitor general as to where the history findings should I have not your honor in terms of whether whether it's the government's position that evidence should be introduced in district court, factual evidence. I can't really seems to me this is a question for the solicitor general. This is a question for the United States, not just for us, right? You gotta have the government's position for us and for everybody else. What's the answer to that? Well, your honor, I mean, I think that the consensus so far is just has been demonstrated by how all these cases have been litigated. Is that the parties are doing their best given the guidance that parties just get to pick and choose. I mean, I'm not blaming you because I'm not a PhD either, but you each gave us, I think, for law review articles, not from historians picked and choose 34 state across two centuries and we have 20 minutes to ask you questions and judge counts didn't have a job doing to ask a single question. So, but I want to follow up on Judge King's observation. Is it just the U. S. Solicitor General or isn't it true that all three of our states in our circuit have laws that govern permitting and licensing and make ineligible charged persons? Is that correct? That is absolutely okay. So we need to hear from the solicitor generals of all three states as to whether they think their state laws now have to fall under Bruin. And I think Bruin, I mean, I know the Rahimi panel took issue with this to some degree, but I think, uh, Bruin weighed in on a, in a sense on those laws in a way that strongly supports the constitutionality of disarming or at least restricting the gun rights, uh, of someone who's been charged with a serious crime by endorsing those very licensing regimes and saying, look, we think, uh, we think these criteria, they didn't call out specifically the criteria that one cannot be under felony indictment to get a license, but they, they referred to the government's job, your burden approved to come up with historical evidence. So where is it? Give it to us. So and why is it apparently different court by court on what the government's proven? Well, we've cited a number of, of historical laws, your honor. I mean, some of these are, are directly historical legal sources we've referred. Let's get specific about the federal statute that talks about pre-trial release. So we've, we've made a condition of release that you cannot possess a firearm. What's the historical analog to that in state, federal, common law that you could make at a condition of pre-trial release? So, so for the, um, we've pointed to detention, for example, so that the, uh, 1789 Judiciary Act was a federal law passed by Congress. It was preceded by two years by the Northwest Territory Ordinance in 1787, right before the constitution was ratified. Uh, these are two historical laws, uh, that broadly authorized detention. So those, uh, they authorized detention for, uh, in the case of the Northwest Ordinance, uh, required detention for people facing capital punishment, which is, as we explained in the brief, uh, was much broader, closer to what we conceptualize as felonies today. If we go then to the tradition of laws, uh, disarming dangerous people, the government's argument on that point is that these, these historical data points, if you will, uh, demonstrate a founding era understanding that give, gives legislature some power to disarm, uh, people for dangerous, dangerousness in order to protect the community. And the historical sources there would be the ones cited in the briefs, uh, regarding, uh, going armed to, you know, going armed in a menacing or terrorizing manner. Uh, even before that, I think an important historical source on legislature's power. Would you object if we were to remand so there can be discovery and expert reports on what actually happened in the 18th century and 19th century? Would you object? I'm seeing the Seventh Circuit has done that. The district court on remand should allow the parties to engage in further discovery, including seeking additional expert reports. Or are you comfortable representing the United States government that you've got the history and we should decide it? I think I think the record is sufficient to sustain this law. I mean, uh, okay. Um, and that that's a position you've taken. Okay. Um, what I would think on that very point, you're representing the United States. You better be sure that the solicitor general and you are on the same wavelength, right? Yes, Your Honor. And I would be happy to provide the the court. I would be happy to consult with higher ups in my, you know, in my the other thing, a lot of district courts are saying they are not getting to the history because they're saying Heller carved out 9 22 provisions, some specific sensitive places, mentally ill felons. And then we get to Bruin and Justice Thomas's majority doesn't say no. Then we've got a concurrence that says, actually, we still have those carve outs. So I'm seeing lower court saying we're not going to get ahead of the Supreme Court. Let's have the that Bruin has changed landscape. I don't hear you arguing that. I think that's I think that's our step one argument. I mean, I think absolutely it's the government's position, but you've got foreclosed by Rahimi. I believe that's right, Your Honor. I mean, I think that's right. We, of course, strongly we think Rahimi effectively eviscerates the first step. We think, in other words, the Supreme Court in Heller couldn't have been clear in Bruin for that matter. Couldn't have been clear that it's talking about, uh, law abiding, responsible citizens, gun rights, and we believe people are presumed innocent. And as Judge Richmond said, they did have it. The government had a shot to detain them. Um, I guess you know what? I'm at a 30,000 ft level. The Supreme Court's telling us in Bruin treat these Bill of Rights provisions the same second. It's not a second class, right? And therefore, I guess you would agree. I still get to vote. If you're released, you can still vote. So isn't there? Is that a improper, simplistic parallel that what Bruin's telling us is now you get all your rights? Well, you know, I think the right to bear arms is different because of the community safety, uh, cases. Yeah. Where is the free trial release analog at the relevant time points in history that said you can tell these people you can't possess a gun and you can't purchase a gun while you were awaiting trial? I don't. Given the type of analogical reasoning that, uh, that Bruin suggests, particularly given that the societal problem of people charged with serious crimes being going out and seeking guns, in a sense, was less of an issue back then because those people were would have been facing capital punishment and therefore detained. So it didn't really didn't really come up then. But I think getting on a plane, right? We're not gonna find an analog back in the 18th century that says you can't get on a plane, but the Supreme Court isn't quite telling us we need a pedigree there. So here it's similar. We didn't really have detention in release at all back then. It's not that we didn't have release, but I think that the category of people now considered to be indicted with a felony tracks pretty closely the category of people who would have been considered to be charged with capital crimes back then and therefore detained. And if you're locked up, there is sort of obviate since Southern District of New York made this exact point a couple of weeks ago, obviates the need to pass a specifically addressing whether people subject to felony indictments can receive a gun. But I think to answer Chief Judge Richmond's question directly, I mean, I don't think anyone's found a 17 91 law, uh, dealing specifically with receipt of firearms by, uh, those charged with with felonies. But you could find it could be 19th century, too, right? Well, it could be, of course, you know, is Supreme Court has explained that would carry less weight in interpreting the founders exact views. We believe that the surety laws that we discussed in our briefs are are contemporaneous and then some later ones are are analogous enough. But that's that's exactly what the Supreme Court has said is that it's got to be analogous. It's got to be relevantly similar. I don't think there's a distinctly similar, uh, type bar that set there. Uh, it just it's an analogy. So, uh, you know, I think Bruin said it itself. It did not mean to put legislatures in a straight jacket in terms of regulating gun rights. And I do, uh, I do want to reserve. I never see that my time's up. I do want to reserve some time for rebuttal. That's, uh, that works. Thank you. Mhm. Mhm. May please the court. Tim Shepherd for the appellee. As the Supreme Court explained in Bruin and this court recently explained in Rahimi, the question of the Second Amendment is one of text and history, not policy. United States for him. Resolved a number of the questions at issue today, and I believe that the court understands that that Bruin framework does apply to Second Amendment challenges that it applies to facial challenges and the Second Amendment protects all Americans on the second step of Bruin. The government has not provided a distinctly similar analog for 9 22 M. Rahimi said that the absence of a distinctly similar analog is evidence of the regulations unconstitutionality. But it did also say to reason by analogy and look at relevantly similar analogs. But the government's examples fail under this even relevantly similar standard, both because many of these examples are not historically significant and because they're not relevantly similar to 9 22 M. So the government begins with pretrial detention, which is this court has noted is meaningfully different from 9 22 M. Pretrial detention detains people and thereby disarms them after a dangerousness assessment. 9 22 M impacts those released pretrial. So from your study, you would agree that a condition banning someone from even possessing a gun and then released that survives Bruin that there's a historical pedigree to justify the whole edifice of 31 42. I do. I do not agree that there's an historical edifice to support 31 42 in all of its its iterations. Well, just, you know, you arrive initial appearance, dangerousness hearing. District Court says no guns. You're good. You can go home till trial. I Well, how is that not equally vulnerable to Bruin? Where's the government's gonna have to meet its burden to say that there's a pedigree of courts doing that? I agree. It might be equally vulnerable. Those suits are being brought. Those suits are being. Yeah, that's right. I guess it was interesting that Judge Judge Counts, Army Colonel decorated, said his opening paragraph colorful. He was in Plato's cave. Just how do we know how to do it is what he's saying. How do we know that are getting minimal help and they're dividing all over the country? Do you agree that here's the question for you? That's the question is, this came up and it had to come up quickly because you're rule 29, right? That's right. So you file a motion to reconsider, and I didn't see any original sources in the motion to reconsider. One answer would be, Well, it's the government's burden, and then they reply quickly. There's no evidence you're hearing, and Judge Counts does his best. It comes up to us. Um, is that the parties compiling and testing historical evidence? What we called a pedigree in a via? That's right. That is it. That's how it's done. That's right. Under Bruin and Thomas spoke to this at various points throughout the Bruin opinion, including in several footnotes. It is the burden of the government. But but in that footnote, I think footnote six, you probably clearly know it well, and it was distinctive about Bruin to me is that they talk about evidence, historical evidence and evidentiary testing over 60 times. And my question is, who's done the evidentiary testing here yet? Has any of those eight district courts have they ever taken any evidence? I don't believe any of them have had an evidentiary hearing. They have relied on the party's briefing, and I do think that this court has the benefit now of a number of district courts having addressed this. So the historical none of them did. You filed your response to Judge Engelmeyer's Rosen, and you say you know that his history is inaccurate. It's unexplained. It's pretextually enforced to the extent exists. But how do we know that that's you against the Southern District of New York? That's right. I do. Some of the evidence that was cited in some of these cases cited by the government is not disputed to be a historical. I think that certain pieces of evidence the government relies on are unequivocally inconsistent with the nation's historical traditions of firing. For example, the 1662 Militia Act. There are many articles. One could rely on Joyce Malcolm's book in this area. Indeed, Heller and Bruin talk about those types of laws as precisely the Bill of Rights in the Second Amendment. So some of the laws that are relied on as historical evidence are simply ahistorical. They don't. We have to decide that as a court of review. That's right. And we have one amicus. That's right. You have one amicus. Rahimi had none. The Supreme Court had over 80. That's right. And I think that's broadly consistent with what took place in New York as well, where over the course of the appeal and the petition for cert, more amici joined and more evidence was presented. One of the earliest cases, the district court agreeing with yours, here, was Holden. That's right. But the court's sort of, like this judge, utterly exasperated. He even says, I hope I misunderstood Bruin. But so the federal defender's position is that even at a court of review level, we could maybe invite amici, we could use FRAP 10, I suppose, supplement the record? Is that the way we've got to go with this? That's right. And I will note, there's been no objection to either party supplementing the history. The historical examples that were presented in the district court are not entirely the same as those presented in this court. And I don't think either party has said that's not proper. So I believe it is appropriate for the parties to supplement. And indeed, if the court wanted additional historical evidence, I... You have it, and how do you get it? As Judge Higginson noted, and I take the point, it is, Bruin dictates that it's the government's burden. So some of this is purely responsive on the... That's how I read your readings below. So... But you're generous to say we could get it through FRAP 10, maybe appoint amici. May I ask, and just be careful in your response, would you therefore have any objection to us doing what the Seventh Circuit did in saying we'd rather have a court of first jurisdiction do it? Would you object to a remand so I can have... You would. Sorry, I would object to a remand. How is it different than saying that we should be doing it ourselves, which you did say a few minutes ago? There is something troubling about remanding to give the government a second opportunity when a man's liberty is at stake. That's true, but Bruin came down the day of the verdict. No one knew what to do. Now, you heard us critical of him. What's the SG? And frankly, and I'd love you to speak to it, the three state SGs, because the logic of your argument in Bruin may compel that those permitting provisions all drop. But if it did just happen day of verdict, this case doesn't look like it's had really any evidentiary examination yet below. I do think that the district court received extensive briefing on this issue, and I take the point that the historical evidence could be supplemented, but this was not a matter of a four-page brief filed in a four-page response. There were extensive briefs filed on the Rule 29. There was a response filed. I was pretty careful last night. Four pages in the motion reconsider, then the government response. This is as to the history. Four pages devoted to it. Then there was your reply. They did a two pages are all the history you give us, right? There are three state laws you cite across two centuries. I'm not critical. You're not a PhD. I'm not a PhD, and it is the government's burden. I guess that's the core response you're giving us. Government missed its burden. That is the core response I'm giving this court, and several district courts have explored the possibility of appointing historians to assist in the court. Mississippi District Judge, I think, has. I believe that the parties disagreed and didn't want an historian in that case. I don't know exactly how it was resolved, but I think there is something meaningfully different about reversing or remanding an outcome in this case in order to permit additional historical evidence, which this court is well situated to address. Oh, gosh, I don't know about the rest of them, but I don't think I'm well situated. No. Sorry. I don't want to presume anybody's great law clerks. What about my threshold argument? And you may just say, Rahimi forecloses this, but there are district courts that are just saying we've got to wait for the Supreme Court to claw back from the carve outs. Airplanes, sensitive places, all these things where 9 22 felony provisions. Those are not the same as D. C. S. Heller predicament. New York's. We're now in a very different world, and I written units and unpublished a via decision. But you you're smart enough to have read everything there. Judge Jones and that panel there said this is an entirely new context. We need the pedigree. So are we? Can we just wait till the Supreme Court tells us the Bruin really meant to even apply to the carve outs the 9 22 sections? I don't think you can, and certainly not in this case. The step one question about whether or not a person is law abiding United States regime, he correctly decided is not part of the question of the Second Amendment. It would be particularly unusual in this case to reason that that was a grounds for foreclosing anything in step one, because, as this court has noted, a person subjected to 9 22 and is merely under indictment, and no court has held in on step one of Bruin that a person or indictment is not protected by the Second Amendment. So while there is some disagreement among courts about whether step one forecloses these types of arguments in 1993, and I think he shut that door. My point is a little different that that 9 22 and unlike even G eight, which you have strong arguments that that's worse because there's a dangerousness finding there and there isn't here. On the other hand, 9 22 and the person has been brought into the criminal justice system. The government, I think you would agree, can just detain him. No gun because he's gonna be detained. So isn't a corollary of that, that if the government has the power to detain no gun I don't believe that that's a corollary under the framing of Bruin, and I appreciate the court's question. I understand the question, but I don't believe it's a corollary here because there's no textual historical support for that. Whereas there may be some textual historical support for limiting the Second Amendment in other in other ways, textual historical support for an airplane, a prohibition on the gun in the airplane. There couldn't be a historical support. I think that the Bruin does permit reasoning by analogy, particularly they identify for dramatic technological or modern advances. So I think there is some some room for addressing changes. But in this case, as this court is noted, people were released pretrial at the time of the founding and the Judiciary Act of 17 89 permitted bail and indeed permitted bail even for those accused of capital crimes upon a judicial finding. So it was not the case that at the time of the founding, everybody was detained or even virtually everybody was detained. Do you think there's any historical precedent for the sensitive places exception? I have not looked at really ill people not allowed to get guns, you know, background checks, just just all sorts of questions. The Heller court identified those longstanding prohibitions and indeed said it was not an exhaustive. So my question, I guess, is why isn't N part of the non exhaustive Heller things that Kavanaugh and Roberts are saying? Those are still intact, though. My issue is not that they're not exhaustive. In the Heller opinion, the court did say we have not conducted an exhaustive historical analysis of these, and I think that's important for us to understand. There may be historical bases for those laws, and they did refer to them as longstanding. But we don't have that historical record in front of us today. We have. Well, one of my questions is you say that people were released pre trial on bail, even in capital cases. There may have been a practice that was prevalent in the colonies that if you're gonna let somebody out on that kind of basis that you were told you can't carry a weapon outside your home or or something, some sort of prohibition on carrying a handgun. We have not seen historical evidence of that. I don't believe the government has historical evidence of that. Indeed, the laws the government site to speak to the fact that those concerns were addressed differently at the time of the founding, which Bruin says is evidence of a challenge that she's addressed by locking them up. Is that your answer? They were addressed by locking them up. Yes. And in addition, the other historical analogs the government relies on insofar as they are historical evidence may speak to other ways that that people who were perceived to be dangerous could have been disarmed. So in what way? You said that people were released pre trial on bail, even in capital cases. So what? Surely courts had the power to impose certain conditions of pre trial release. What do we know? What? Some of the common ones were the examples that we have from from the government's briefing from our briefing are or shorty laws, which are meaningfully different in a number of ways. But I do think speak to the fact that if there was a credible individualized fear about a particular person, then you could detain the person or you could in that work in Rahimi, there was a court finding of dangerousness. So I can't. I mean, Rahimi was decided and I and I think this court would agree that shorty laws were far more similar to 922 G8 than they are to 922 N. And yet they were still not considered sufficiently similar to justify 922 G8. And one point that the Rahimi court did not address is that several of those shorty laws are of dubious historical value. Bruin specifically identified that the 19th century historical laws or shorty laws were enforced protect truly against black Americans and were fully appreciate your resistance on behalf of your client to a remand. But I do think if it's a four four tie around the country and judges throwing their hands up, they just need to do some hard work, right? We are sort of mocking and trivializing Bruin when the court there with 80 amici said, find the evidence, compile it, test it. And no one seems to be doing that. I do. I understand the court, the court's frustration with that. I do. I just want to correct one thing, and I don't mean for this to sound tedious, but I believe that it's four to three in favor of, but I, if I'm wrong, please, please let me know. I think this is four to three. But I appreciate the point that courts are. You are declaring N to be unconstitutional. That's right. Quiros, Holden. Hicks and Stambaugh. But I appreciate the point that's being made, which is that courts are wrestling with this issue. But I don't know that the fact that courts are wrestling with an issue justifies remanding or reversing where, you know, the district court found and dismissed these charges, and Mr. Quiros has since been released. Was I right in drawing from your reply brief below to Judge Counts in my question to opposing counsel that the logic of your argument would implicate loss in all three of our states? That's right. But a lot more people are released than they are in the federal system. That's right. Some of those people are very dangerous. And so those, the views of those solicitor generals would be interesting. I agree. I would respectfully respond as well that it's not merely the view of the Federal Defender's Office, but I believe it's broadly consistent with Bruin and with United States v. Rahimi. So we're simply trying to follow the Supreme Court and Fifth Circuit law in this area. Do you have a thought intellectually about the Chief Justice Roberts-Kavanaugh concurrence? Which part specifically? Well, that they reiterated and quoted in full Justice Scalia saying we aren't, by Bruin, we aren't jeopardizing what I think of as the 922 felony prohibition. I have intellectual thoughts on it that may not be appropriate for this argument necessarily, but I do, I think that for 922N purposes, it doesn't really speak to, it may speak more authoritatively to something like 922G1, where the Court has said there's this longstanding prohibition, but 922N is distinguishable. If the Court doesn't have any other questions on Bruin, I do want to make sure to address the 922A6 question as well. As Mr. Quiros, when he purchased the firearm in this case, filled out an ATF form in which he said that he... We know what he did. Okay. I apologize. The government argues that the district court erred in dismissing that. The government, though, characterizes this as a collateral constitutional challenge, which it simply is not. It was a challenge to the materiality element of 922A6. The sole basis of materiality of that false statement is 922N. The government's cases, by and large, do not deal in materiality. They deal in constitutional challenges. The only case the government... Truthfulness is material. So if the person walks in, I mean, the district court gives one sentence and cites nothing. So we don't have much to assess that, right? Yes. But the point is, you can't challenge a question you're asked by lying to the government and then later say, well, I thought that question was unconstitutional, so it, therefore, is immaterial. Can you? I believe you can in this case because it's not a constitutional challenge. It's a materiality challenge, and it's always the government's burden to prove materiality. So if they don't prove materiality or if they can't prove materiality, that is relevant. I think that the Kapp case is instructive on this, as well as the Bryson case. Let's say the form says, give me your home address, your serial number. It has nothing to do with it. And the guy writes his wife's serial number down. Straw purchaser. That's material inasmuch as the person was untruthful, hiding the identity, but it may not have been material to the purpose behind. I agree that that is material. And indeed, Abramski of the United States, the Supreme Court, explained that in a straw purchase, the identity of the person is always material. No court has held the same with respect to the 922N question. The only courts addressed it have held the opposite, this case and Holden. And Bryson of the United States, which the government cites to, I see that I'm out of time. Can I, can I briefly? Bryson, the United States clarifies that if this had been a challenge to an element of the statute, it might've been different. And indeed in the Kapp case, the materiality of the false statement in that case was about the value of livestock being sold. So the court explained this is independently material from any unconstitutional underlying statute because cheating, swindling, defrauding the government is always material. That's not the case here. And I don't know that it's disputed that the sole basis of the materiality of this issue is 922N. Unless the court has any other questions, I'll, thank you very much. Was he sentenced concurrently on one and two? Well, the indictment was dismissed, so he was not sentenced. Oh, right. He wasn't sentenced. Okay. That materiality, we didn't get to that because I've questioned that. Let's say I go into and fill out the form and it says, what's your gender? And I put male and I'm female. And what's the materiality of that lie? Uh, I'm not sure that that would be material. I mean, it depends if there's a law out there that says, uh, you know, it's kind of a counterfactual. If there were a law out there that says you could only buy a gun if you're male. Let's say we said 922N is unconstitutional. It's off the books. So what's the materiality of lying about whether you're under indictment? It was, it was certainly not. It had certainly not been held unconstitutional at the time. I'm saying if we do. If you do, it wouldn't. Well, even if we do, we should hold the conviction on the lie. And I'm trying to test that. Yes, Your Honor. And I think this is, this is precisely what the Supreme Court has said over and over. You can't retrospectively say it's okay that I lied about complying with a statutory requirement because that statutory requirement is unconstitutional. I frankly, I'm trying to follow the distinction, uh, that Mr. Kuderos is trying to draw between this body of six or eight Supreme Court cases and the situation here. But, but one thing I can say for sure is that this court, uh, in an unpublished opinion in Bledsoe didn't see that distinction, uh, because it applied that line of Supreme Court authority to this exact, as far as I can tell, the claim in Bledsoe was identical. It was a, uh, age restriction, uh, in 922 violates the second amendment and therefore he couldn't be prosecuted for, um, for, for having lied about his age. It's an identical claim as far as I can tell. And, uh, this court held, nope, we're going to follow the line of Supreme Court authority on this. I think that controls, aside from the fact that it's unpublished, I do think it's correct and I think it's squarely on point here. Um, I was counting this court's decision in Avila, I realized when I said four to four. So, um, of course you're right, Your Honor. I didn't realize I had, I had four to four in my head, but I was counting that one just to, to clarify that. Um, to, to make my position clear on, uh, the first step of Bruin, regardless of what the, the panel did in Rahimi, which as I mentioned in my letter, the government is going to be seeking further review of that decision. I do think this court can bypass, uh, Bruin. I mean, I think this court can bypass Bruin under the, the body of Supreme Court authority that deals directly with liberty restrictions on indicted defendants. Like I said, I've used Salerno as kind of a shorthand, but this is, uh, Gerstein versus Pugh. It was a fourth amendment case. Uh, Bell versus Wolfish, 1979. These are all in my brief. Uh, then you've got the pair of cases dealing with Caesar of Assets, uh, Monsanto in 89 and then Kaley in 2014. Uh, I thought Bruin said, you can't let history conflict with the express wording in the second amendment. Well, Bruin didn't deal with the kind of challenge that these Kaley, Salerno, Monsanto cases dealt with. It wasn't talking about, uh, indicted defendant. They weren't dealing with an indicted defendant. And what they did say, uh, I think it's at 2156, is that the second amendment is subject to the same body of constitutional rules as the other bill of rights amendments. And one of those rules is the rule that this, uh, that the Supreme Court applied to the fourth amendment, uh, in Bell versus Wolfish, the first amendment in Bell versus Wolfish, uh, the fifth and sixth amendments in Monsanto and Kaley, uh, the eighth amendment in Salerno, the fifth amendment in Salerno. Uh, the point here is that the bill of rights amendments accommodate, uh, restrictions on people accused of crimes that are, that are necessary to protect the public and the operation of the criminal justice system. Isn't this a straightforward attack on Bruin? I think it's a new legal test. I think it's a, it's essentially a, uh, it's something Bruin didn't have occasion to address. I mean, I, I just, it didn't deal with how, uh, how, to the extent it dealt with it at all. It said the same rules apply. Although the second amendment might not be a second class right, the Supreme Court has now said that multiple times. It also doesn't hold some sort of sort of superior status, uh, that would make it immune to accommodations, criminal justice related accommodations that all of the other bill of rights amendments. Yes, your honor. Yes, out of time. Thank you. That will conclude the argument before our panel. The cases are under submission. Thank you.